UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

**DECISION AND ORDER**
10-CR-396A

v.

JOSEPH KALUZA,

                Defendant.

---

**I.  INTRODUCTION**

Pending before the Court is a motion by defendant Joseph Kaluza for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure ("FRCP").  Defendant was convicted on February 9, 2011 of willful failure to make a timely application in good faith for a travel document necessary to his departure, in violation of 8 U.S.C. § 1253(a)(1)(B).  Defendant contends that a judgment of acquittal is necessary because the Government failed to meet its burden of proof with respect to establishing willfulness, untimeliness, and the necessity of the travel document in question.  The Government opposes the motion, arguing that the jury reasonably could have inferred willfulness and untimeliness from defendant's refusal ever to apply for a travel document.  The Government argues further that sufficient evidence emerged at trial to establish the necessity of the travel document.

The Court held oral argument on April 4, 2011. For the reasons below, the Court denies the motion.

## II. BACKGROUND

This case concerns allegations that defendant is deliberately frustrating a settled order of removal to Poland out of a stated fear of political retribution. Defendant was born in Poland in 1956. Defendant has been a citizen of Poland with no lawful immigration status in the United States. Assuming without deciding the accuracy of his background narrative, defendant was an activist in the anti-Communist Solidarity movement in the early to mid-1980s. After several run-ins with Communist officials that occurred in retaliation for his political actions, defendant left Poland in 1986 and entered the United States as a visitor on July 13, 1986. The visitor visa lasted six months. Even though his visitor visa has long since expired, defendant has remained in the United States. The docket and defendant's immigration file contain some information suggesting that defendant did not draw the attention of immigration officials until a series of drunk-driving convictions early last decade caused him to serve several years of imprisonment in the New York state prison system.

Defendant's efforts to remain in the United States after immigration officials noticed his visa violation laid the foundation for the prosecution of this case. On October 8, 2004, while defendant was in state prison, immigration officials served him with a Notice to Appear, charging him with overstaying his visitor visa without

authorization and thus being subject to removal. An immigration judge first ordered defendant removed on January 13, 2005. That order of removal was upheld by the Board of Immigration Appeals ("BIA") on May 10, 2005; defendant made but then withdrew an appeal to the United States Court of Appeals for the Second Circuit. Meanwhile, defendant had applied for asylum on the grounds of fear of political persecution. On June 9, 2008, an immigration judge denied defendant's request for asylum and again ordered him removed. The BIA affirmed the denial of asylum on August 29, 2008. Defendant appealed the denial of asylum to the Second Circuit, which dismissed the appeal as frivolous on March 17, 2009. On March 27, 2009, defendant filed a motion with the BIA to reopen his case, which the BIA denied on April 24, 2009. Defendant appealed the refusal to reopen to the Second Circuit on June 26, 2009. The Second Circuit dismissed this appeal on January 12, 2010 and issued the corresponding mandate on February 2, 2010. Defendant's removability became final as of this date.

    Even after defendant's removability was definitively resolved, however, the last logistical step in completing his removal was that he had to apply to the Polish Consulate for a travel document that would allow him to re-enter Poland. Four times—on February 4, March 3, April 30, and June 10, 2010—the Government gave defendant 30 days to apply for the travel document. Four times, defendant refused and let the deadlines pass, citing fear of political

retribution if he ever returned to Poland. To date, defendant has yet to apply for a travel document, knowing that he cannot be removed to Poland if he never makes that application. From November 10, 2005, when he was released from state custody, to December 30, 2010, defendant was in continuous immigration custody. Since December 30, 2010, defendant has been in the custody of the United States Marshals because of the criminal charge in this case.

The Government criminally prosecuted this case in response to defendant's refusal to apply for a travel document. On December 22, 2010, the Government filed a one-count indictment charging defendant with willful refusal to make a timely application in good faith for a travel document, in violation of 8 U.S.C. § 1253(a)(1)(B). On February 8, 2011, the Court granted the Government's motion *in limine* to preclude defendant from re-litigating his immigration case by telling the jury what he feared might happen to him if he returned to Poland.[1] On February 9, 2011, the Court held a one-day trial after which the jury found defendant guilty of the count in the indictment.

---

[1] Apart from the issue of re-litigation, defendant never offered any specific information to support his speculation that Communists or ex-Communists would look for him 25 years after he left Poland. *Compare Leiva-Perez v. Holder*, ___ F.3d ___, 2011 WL 1204334, at *8 (9th Cir. Apr. 1, 2011) ("Leiva–Perez testified before the IJ, who found Leiva–Perez credible, that he was personally targeted for extortion and savage beatings by a particular group of individuals affiliated with the Farabundo Martí National Liberation Front ('FMLN'), a political party.") *with U.S. v. Flores-Santos*, 269 Fed. App'x 196, 2008 WL 683937, at *2 (3d Cir. Mar. 14, 2008) (unpublished) ("Flores-Santos did not present any evidence in support of his subjective fear of returning to El Salvador, either pretrial or on appeal. Thus, the District Court did not err in barring the justification defense.").


Through the pending motion, defendant now attacks the jury verdict as unsupported by sufficient evidence. Specifically, defendant contends that the Government did not meet its burden of proof with respect to the third and fourth elements of the offense. The third element required the Government to prove that defendant willfully failed or refused to make timely application in good faith for a travel document. According to defendant, the Government could not have established untimeliness where the word "timely" was not defined in the statute and where the four extensions of the deadline to apply for a travel document made the issue of timeliness confusing. Because the issue of timeliness was confusing, the Government also could not establish that defendant failed to make a timely application willfully. The Government opposes this argument by noting that it is academic, since defendant has not applied for a travel document even through the present time. The fourth element required the Government to prove that the travel document in question was necessary for defendant's removal. According to defendant, the testimony of immigration agents Joseph Koson ("Koson") and Daniel Henderson ("Henderson") was not enough to establish that Poland will not accept defendant without a travel document. The Government disagrees and contends that the jury reasonably relied on the testimony that the agents gave based on their experience with immigration cases, including cases concerning the Polish Consulate.

## III. DISCUSSION

### A. *FRCP 29(c) Generally*

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." FRCP 29(c). "The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter." *Curley v. U.S.*, 160 F.2d 229, 232–33 (D.C. Cir. 1947) (footnote omitted). The Court will assess defendant's arguments under the well articulated and time-honored *Curley* standard, mindful that it will "view the evidence presented in the light most favorable to the government [and] draw all reasonable inferences in its favor." *U.S. v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (citation omitted).

**B.**     *Third Element of Section 1253(a)(1)(B)*

The statute in question, 8 U.S.C. § 1253(a)(1)(B), imposes criminal penalties on "[a]ny alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a) of this title, who . . . willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ." There are, therefore, four elements to a violation of this provision: 1) defendant has to be an alien; 2) a final order of removal has to be outstanding against defendant; 3) defendant must willfully fail or refuse to make timely application in good faith for a travel document; and 4) the travel document in question must be necessary to complete removal. Defendant did not contest the first two elements at trial. As for the third element, defendant is correct that Section 1253 does not supply a definition of "timely." *See also U.S. v. Calderon-Minchola*, No. 1:06-CR-0309, 2007 WL 1704649, at *2 n.8 (M.D. Pa. Jun. 12, 2007) ("The court notes that there is no case law specifically defining 'timely' under 8 U.S.C. § 1253(a)(1)(B)."). The word "timely" is not an esoteric or arcane word, however. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. U.S.*, 508 U.S. 223, 228 (1993) (citations omitted).

Here, defendant's continuing refusal to apply for a travel document placed his case within any ordinary definition of "timely" that the jury may have drawn from its experience. Defendant knew no later than February 2, 2010 that the

7

issue of his removability was definitively settled.  The Government told defendant as far back as February 4, 2010 that he needed to apply for a travel document. Over a year after that date, defendant still has not made that application.  Even giving a defendant the benefit of the doubt that four extensions of the application deadline created some confusion about timeliness, about seven months passed between the last deadline expiration in July 2010 and the trial.  Under these circumstances, the jury reasonably could have inferred from the seven-month delay that defendant never will apply for a travel document.  Regardless, then, of any exact definition of the word "timely," the jury reasonably could have decided that no definition of that word would encompass as long a delay as has occurred here.  The Court thus denies defendant's motion with respect to the third element of the offense.

  **C.** ***Fourth Element of Section 1253(a)(1)(B)***

Next, defendant challenges whether the Government proved sufficiently that the travel document in question is "necessary" under Polish law to complete his removal.  Resolving defendant's challenge requires clarifying whether it is a factual or legal challenge.  "A factual challenge tests the sufficiency of the evidence and requires a court to examine whether a reasonable jury could find each element of a crime proven beyond a reasonable doubt.  A legal challenge, by contrast, questions whether a conviction rests on a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the

evidence." *U.S. v. Desnoyers*, ___ F.3d ___, 2011 WL 855795, at *3 (2d Cir. Mar. 14, 2011) (citations omitted); *see also Griffin v. U.S.*, 502 U.S. 46, 59 (1991) ("Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime.  When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.  Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.") (citation omitted).  Here, the issue at trial was whether, as a practical matter, the Polish Consulate would have arranged to repatriate defendant if defendant never contacted it and asked for a travel document.  Koson and Henderson testified that, in this case and in their experience, the answer is no.  The jury reasonably could have credited the agents' experience and testimony and decided, for example, that defendant would have been returned to Poland by now if removal could be completed without a travel document.  Defendant thus is raising a factual issue about his continued presence in the United States and not a legal issue about the details of Polish law.  Given the evidence that emerged at trial that the jury reasonably could have credited, the Court denies defendant's motion with respect to the fourth element of the offense.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court denies defendant's motion for a judgment of acquittal (Dkt. No. 24).  Sentencing remains scheduled for May 25, 2011 at 12:30 p.m.

SO ORDERED.


*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: April 25, 2011